# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MD ACQUISITION, LLC et al., | : | |
| Plaintiffs, | : | Case No. 2:08-cv-494 |
| v. | : | Judge Holschuh |
| MARTIN L. MYERS et al., | : | Magistrate Judge King |
| Defendants. | : | |
| | : | |

## MEMORANDUM ORDER AND OPINION

This state law action seeking recission of a stock purchase agreement, or in the alternative damages for various state law claims, was removed from the Franklin County Court of Common Pleas by Plaintiffs MD Acquisition, LLC ("MD Acquisition") and Martin Designs, Inc. ("Martin Designs") (collectively, "Plaintiffs"), alleging federal question jurisdiction under 28 U.S.C. §§ 1334 and 1452. (Notice of Removal, doc. # 2.) This matter is now before the Court on Martin Designs' Motion to Transfer the case to the United States Bankruptcy Court for the Northern District of Ohio (doc. # 15), and Defendant Martin L. Myers' ("Myers") Motion for Abstention and Remand, seeking to have the case returned to the Franklin County Court of Common Pleas (doc. # 18). Additionally, Martin Designs has moved for oral argument on the pending motions (doc. # 30), but the Court finds that oral argument is not essential to the fair resolution of this case, see S. D. OH CIV. R. 7.1(b)(2), and thus **DENIES** Martin Designs' Request for Oral Hearing (doc. # 30.) For the reasons stated below, the Court **GRANTS** Martin Designs' Motion to Transfer and **DENIES** without prejudice Myers' Motion for Abstention and Remand.

**I.  Background**

Myers was the founder, sole shareholder, and chief executive officer of Martin Designs, an Ohio corporation in the business of buying products such as stationary, repackaging those products with a licensed brand such as Nickelodeon or Crayola, and then selling those repackaged products to distributors such as Wal-Mart and Walgreens at a profit. (Compl. ¶¶ 4, 8, doc. # 3.) In October 2003, however, MD Acquisition entered into a Stock Purchase Agreement with Martin Designs and Myers in which MD Acquisition became the majority shareholder in Martin Designs. (Id. ¶ 6.) In the Stock Purchase Agreement Myers represented that Martin Designs' existing inventories were in good and marketable condition, were not obsolete, damaged, or slow-moving, and could be sold in the ordinary course of Martin Designs' business. (Id. ¶ 9.) The Stock Purchase Agreement created an escrow account of $400,000 payable to MD Acquisitions in the event that Myers' representations concerning Martin Design's inventories were false, and payable to Myers in the event that his representations were true. (Id. ¶ 12; Counterclaim ¶ 5, doc. # 5.)

Myers remained a minority shareholder and an employee of Martin Designs. Pursuant to a Stockholder's Agreement between Myers, MD Acquisition and Martin Designs entered into contemporaneously with the Stock Purchase Agreement, Myers agreed that any ideas related to Martin Designs' business that he conceived while employed by Martin Designs would belong to Martin Designs. Furthermore, in an Executive Employment Agreement executed contemporaneous with the Stock Purchase and Stockholder's Agreements, Myers also agreed that he would devote his best efforts and skill to Martin Designs' business and continued success. (Compl. ¶¶ 7, 14, 16, 23.)

After the various Agreements were completed, MD Acquisitions alleges that it "discovered that a significant part of Martin Designs' inventory was either 'slow-moving' or not "saleable in the ordinary course of'" Martin Designs' business. (Compl. ¶ 11.) As a result, MD Acquisitions

2

demanded that Myers release the escrow account. (Id. ¶ 13.) Myers refused, however, and alleges that MD Acquisition improperly sold inventories that conformed to Myers' representations, resulting in a large loss to Martin Designs that could have been avoided if the inventories had been sold in the ordinary course of business. (Counterclaim ¶¶ 6-10.)

MD Acquisition also alleges that, while still an employee of Martin Designs, Myers founded a new company called Pet Brands that applied Martin Designs' strategy of applying licensed images to prepurchased goods (in the case of Pet Brands, pet products) and then reselling those goods at a profit. MD Acquisition alleges that this idea "was a logical and reasonable extension of Martin Designs' own . . . business strategy" that Myers should have disclosed to Martin Designs, and that Myers' work starting and operating Pet Brands deprived Martin Designs of Myers' best efforts to further Martin Designs' business. (Compl. ¶¶ 18-24.) Myers eventually left Martin Designs in 2005.

Plaintiffs sued Myers and Pet Brands in the Franklin County Court of Common Pleas in September 2005. MD Acquisition sought recission of the Stock Purchase Agreement but, in the alternative, Plaintiffs brought numerous state law contract and tort claims seeking damages for breach of the Stock Purchase, Stockholders' and Executive Employment Agreements, tortious interference with contractual relations, unjust enrichment, and misappropriation of trade secrets. In response, Myers asserted state law counterclaims for breach of the Stock Purchase Agreement and for breach of fiduciary duties against MD Acquisition, and for indemnification against Martin Designs.

During 2006 and 2007 the state court heard and ruled on numerous dispositive motions filed by the parties, which resulted in the state court dismissing MD Acquisition's claim against Myers

3

for recission of the Stock Purchase Agreement and Martin Designs' and MD Acquisition's claim for tortious interference with contractual relations against Pet Brands.[1] (Mot. Abstention and Remand p. 7, doc. # 18.) The state court also granted Myers' motion for partial summary judgment on his counterclaim against Martin Designs for indemnification in March 2007 and, after the Ohio courts refused to hear Martin Designs' appeals of this issue, in January 2008 the state court ordered Martin Designs to pay Myers $567,580.39 to cover Myers' attorneys fees and expenses. (Id. p. 6.) However, Martin Designs' business had dropped dramatically after Myers left and its lender had cut off its line of credit, leaving Martin Designs unable to comply with the state court's order. Martin Designs thus filed a voluntary chapter 7 bankruptcy petition in the Bankruptcy Court for the Northern District of Ohio in February 2008. (Notice of Removal ¶¶ 4, 5, doc. # 2.)

Martin Designs removed the action to this Court on May 20, 2008 pursuant to 28 U.S.C. § 1452, alleging subject matter jurisdiction under 28 U.S.C. § 1334. (Id. ¶ 6.) Martin Designs also requested that the action be transferred to the Northern District of Ohio for referral and consolidation with the pending bankruptcy case.[2] (Mot. Transfer, doc. # 15.) Myers opposed that motion and himself moved the Court to remand the case back to the state court, or to abstain from hearing the action and return it to the state court, on June 13, 2008. (Doc. # 18.) The parties have filed their responses and replies, and these issues are now ripe for adjudication.

---

[1] Plaintiffs later voluntarily dismissed their other claim against Pet Brands, and Pet Brands is no longer a party to this case.

[2] Martin Designs had also removed a related action between it and Myers, originally commenced in Ashland County, directly to the Northern District of Ohio, and it was referred to the Bankruptcy Court as an adversary proceeding to Martin Designs' bankruptcy case. Myers, however, has since dismissed the removed Ashland County action. (Mem. of Debtor in Opp'n. p. 5-6, doc. # 22; Def. Reply p. 2, doc. # 29.)

## II.   Discussion

The parties' competing motions raise the preliminary question of which motion to address first: Martin Designs' Motion to Transfer, or Myers' Motion for Abstention and Remand?  Myers argues that the Court "should first determine whether the claims should be remanded" (Mot. Abstention and Remand p. 8-9, doc. # 18), and cites Renaissance Cosmetics, Inc., *et al.*, v. Development Specialists Inc., *et al.*, 277 B.R. 5 (S.D.N.Y. 2002), *overruled on other grounds by* Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436 (2d Cir. 2005), for support.

The main plaintiff in that case, a chapter 11 debtor, filed suit against the defendants in New York state court, which the defendants removed to the Southern District of New York pursuant to §§ 1452 and 1334(b).  The defendants moved for a remand to the New York state court, while the plaintiffs sought a transfer to the District of Delaware for referral to the bankruptcy court.  Id. at 9-11.  The Renaissance Cosmetics court first noted that "[a] party seeking to consolidate a state action with a bankruptcy proceeding pending in another judicial district must first remove the state action to the district in which that state action was filed, and then move to transfer venue to the district in which the bankruptcy case is pending[,]" id. at 11, and then stated that "courts faced with cross-motions for remand and change of venue consider the remand motion first and, if remand is denied, turn to the motion for change of venue[,]" id.  The court considered and denied the remand motion, and granted the transfer motion.  Id. at 20.

The Renaissance Cosmetics court did not engage in any in-depth analysis or explain why it believed that it should consider the remand motion before the transfer motion; rather, the court simply cited two other Southern District of New York opinions - Arstk Inc. v. Audre Recognition Sys., Inc., No. 95 CIV 10519, 1996 WL 229883 (S.D.N.Y. May 7, 1996), *overruled on other*

5

*grounds by* Mt.McKinley Ins. Co. v. Corning Inc., 399 F.3d 436 (2d Cir. 2005), and Nemsa Establishment, S.A. v. Viral Testing Sys. Corp., *et al.*, No. 95 CIV 0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995). Both of those cases also involved cross-motions for remand/abstention or transfer in which the district court analyzed the motion for remand and abstention before the motion for transfer, but neither opinion gives any rationale for addressing the remand and abstention motion before the transfer motion. In both Arstk and Nemsa the district courts simply discussed the remand motion first with no analysis, without even acknowledging the possibility of addressing the transfer motion first. This Court does not find such cursory and nonexistent analysis persuasive.

Much more persuasive are several opinions from the Eastern District of Louisiana, beginning with Consolidated Lewis Investment Corp. v. First National Bank of Jefferson Parish, *et al.*, 74 B.R. 648 (E.D. La. 1987). In that case the plaintiff, a chapter 11 debtor, filed a civil action against the defendants in Louisiana state court, which the defendants removed to the Eastern District of Louisiana. The defendants then moved to transfer the case to the bankruptcy court for the Middle District of Louisiana, where the plaintiff's chapter 11 reorganization was ongoing. The plaintiff opposed this motion and sought a remand to the Louisiana state court. Id. at 650. The Consolidated Lewis court, like the Renaissance Cosmetics court, first noted that "the proper procedure when removing a state court action across federal district court lines is to remove the action first to the district court in which the removed action is pending and then . . . transfer the action across district lines to the court of proper venue," id. at 651, but then held that the bankruptcy court was the proper court to consider whether the action should be remanded to the state courts. The Consolidated Lewis court took note of 28 U.S.C. § 157(b)(3), which states: "The bankruptcy judge shall determine . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise

6

related to a case under title 11." Because the question of whether a removed action should be remanded depends on whether the removed action is a core proceeding or not, the Consolidated Lewis court held that addressing the remand motion would deprive the bankruptcy court judge of making its own § 157(b)(3) determination. The Consolidated Lewis court thus transferred the case to the Middle District of Louisiana and did not address the plaintiff's motion to remand. Id.

Bayou Steel Corp. v. Boltex Manufacturing Co., L.P., No. Civ.A 03-1045, 2003 WL 21276338 (E.D. La. June 2, 2003) followed Consolidated Lewis. The plaintiff in Bayou Steel, a chapter 11 debtor, filed suit against the defendant in Louisiana state court, which the defendant removed to federal court and then sought to transfer to the Northern District of Texas, where the plaintiff's chapter 11 case was pending. The plaintiff moved for abstention and remand to the Louisiana state court. Id. at *1. The Bayou Steel court addressed the motion to transfer first, and stated:

> There is a strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending. The considerations behind this presumption are heightened here, because the determination under 28 U.S.C. § 157(b)(3) (*i.e.* whether this proceeding is a "core" proceeding or is merely "related to" the bankruptcy case) is required in order to decide plaintiff's motion for abstention and/or remand. This determination is for the bankruptcy judge, who in this case, derives her jurisdiction from the United States District Court for the Northern District of Texas. Thus, the interests of justice and the efficient administration of the bankruptcy estate strongly favor transfer, so that the bankruptcy court can decide *inter alia* whether abstention is either required or warranted.

Id. (*citing* Consolidated Lewis, 74 B.R. at 651) (internal citations omitted). Other courts have cited and followed Consolidated Lewis and Bayou Steel, and have refrained from resolving motions for abstention and remand when a motion to transfer is pending. See, e.g., Orix Finance Corp. v. NexBank, SSB, No. 3:08-cv-0550-B, 2008 WL 2796069 (N.D. Tex. July 15, 2008); Marquette Transp. Co., *et al*. v. Trinity Marine Prod., Inc., *et al*., No. 06-0826, 2006 WL 2349461 (E.D. La.

7

Aug. 11, 2006).

This Court finds Consolidated Lewis and Bayou Steel persuasive, and declines to follow Renaissance Cosmetics. Myers has moved for mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), and equitable remand pursuant to 28 U.S.C. § 1452(b). (Mot. Abstention and Remand p. 8, doc. # 18.) For mandatory abstention to apply, however, the removed Franklin County action must "(1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) *be a non-core proceeding*." In re: Dow Corning Corp., 86 F.3d 482, 497 (6th Cir. 1996) (emphasis added). To determine if mandatory abstention applies, this Court would need to determine whether the Franklin County action is a core proceeding or not. Section 157(b)(3), however, clearly states that " the *bankruptcy judge* shall determine . . . whether a proceeding is a core proceeding[.]" 28 U.S.C. § 157(b)(3) (emphasis added). It is not this Court's position to rule on a matter that is statutorily reserved to a bankruptcy court judge who in this case is located in another judicial district.

Questions of permissive abstention and equitable remand are also better left to the bankruptcy court. Permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are essentially identical, and courts examine the same set of factors under either section. In re: National Century Financial Enterprises, Inc., Investment Litigation, 323 F.Supp.2d 861, 885 (S.D. Ohio 2004) (Graham, C.J.). Courts consider

> 1) the effect or lack of effect on the efficient administration of the [bankruptcy] estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy

case; 7) the substance rather than the form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of [the] court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and 13) any unusual or significant factors [such as judicial economy, prejudice to the involuntarily removed party, or comity considerations].

Id. A review of these factors reveals that the bankruptcy court is in the best position to consider many of them due to its familiarity with Martin Designs' ongoing bankruptcy proceedings and bankruptcy law, such as abstention or remand's effect on the efficient administration of Martin Designs' estate, the relationship between state and bankruptcy law, the relatedness of this proceeding to Martin Designs' main bankruptcy case, the actual substance of the core proceeding, and the bankruptcy court's docket.

This Court is persuaded that it should address Martin Designs' Motion to Transfer before Myers' Motion for Abstention and Remand. Attempting to address and rule on the remand motion would present significant problems for this Court, such as the necessity of making a § 157(b)(3) core proceeding determination that is reserved to a bankruptcy court judge and the necessity of attempting to weigh the permissive abstention and equitable remand factors that would be better addressed by the bankruptcy court judge more familiar with the nature of Martin Designs' main bankruptcy case. Therefore, the Court turns to considering whether this matter should be transferred to the Northern District of Ohio.

Martin Designs does not specifically identify the statute under which it is requesting a transfer, but 28 U.S.C. § 1412 states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The party requesting transfer carries the burden of proof to show that transfer is proper.

9

Things Remembered, Inc. v. BGTV, Inc., 151 B.R. 827, 833 (Bankr. N.D. Ohio 1993). The "interest of justice" and "convenience of the parties" standards in § 1412 are disjunctive and separate, and transfer is appropriate even if only one is met. Id. at 832; see also 1 COLLIER ON BANKRUPTCY ¶ 4.04[4][a] (rev. 15th ed. 2008).

For many of the reasons already discussed, the interests of justice support granting Martin Designs' motion. There is a "strong presumption that proceedings related to a bankruptcy case should be transferred to the district where the bankruptcy proceedings are pending," Marquette Transp. Co., 2006 WL 2349461 *4, and this presumption is particularly relevant in this case due to the issues raised by Myers' Motion for Abstention and Remand. Myers' motion for mandatory abstention requires a court to determine whether the removed Franklin County action is core or non-core, but § 157(b)(3) clearly states that the bankruptcy judge must make this determination and this Court cannot make that § 157(b)(3) determination. Myers' motion for permissive abstention and equitable remand also requires a court to balance the National Century Financial factors, and as the Court has already stated the bankruptcy court is in the best position to correctly evaluate those factors and determine whether it should exercise its jurisdiction over this action or abstain and return it to the state courts. Because the issues raised by Myers' motion must be addressed by the bankruptcy court, a transfer pursuant to 28 U.S.C. § 1412 to the Northern District of Ohio for referral to the bankruptcy court already handling Martin Designs' chapter 7 bankruptcy case is in the interest of justice, and Martin Designs' motion should be granted.

### III. Conclusion

For the reasons stated above, Martin Designs' Motion to Transfer (doc. # 15) is **GRANTED**. This case is transferred to the Northern District of Ohio for assignment to the bankruptcy court

which is currently presiding over the bankruptcy proceedings involving Martin Designs.  Myers' Motion for Abstention and Remand (doc. # 18) is **DENIED** without prejudice to its renewal in the bankruptcy court, which is the appropriate forum to resolve the issues presented by Myers' motion.

**IT IS SO ORDERED**.

Date: February 23, 2009  **/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court